IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DIANA Y. MARTI NOVOA,

Plaintiff,

v.

RUBEN HERNANDEZ GREGORAT, ET AL.,

Defendants.

CIVIL NO. 09-1355 (JAG/CVR)

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

Plaintiff Diana Marti-Novoa (hereafter "plaintiff Marti-Novoa") filed the Amended Complaint in this civil action alleging that, after the general elections were held in the Commonwealth of Puerto Rico won by the New Progressive Party (hereafter "NPP"), she was dismissed from her career position as purchasing agent because of political discrimination, that is, being a known member of the opposing party, the Popular Democratic Party (hereafter "PDP") although the pretextual reason was that she had not paid her Union dues.

Plaintiff Marti-Nova requests reinstatement, economic and punitive damages, for the claimed violation of her First Amendment, due process and equal protection rights under the United States Constitution, and the civil rights section under 42 U.S.C. §1983, as well as pendent claims under the laws and the Constitution of the Commonwealth of Puerto Rico.[1] *Amended Complaint, Docket No. 106.*

---

[1]  State claims are averred under the Constitution and laws of the Commonwealth of Puerto Rico, Sections 1, 4, 6 and 7 of Article II of the Constitution of Puerto Rico and the Public Service Personnel Acts, Law No. 131 of May 13, 1943, P.R. Laws Ann., Tit. 1, §§13-19, Law No. 100 of June 26, 1952, and Articles 1802 and 1803 of the Puerto Rico Civil Code, Tit. 31, §§ 5141-5142. *Amended Complaint ¶59.*

Plaintiff Marti-Novoa filed her claims against numerous defendants, in their individual and official capacities as officers of several agencies of the Commonwealth of Puerto Rico, to wit: Rubén Hernández-Gregorat, Secretary of the Transportation and Public Works Department; Santos M. Delgado-Marrero, President and General Manager of the Metropolitan Bus Authority (hereafter "MBA"); Gladys Fuentes-Cruz, Vice President of Management and Human Resources; Juan Carlos Blanco, Chief of Staff; Maria Sánchez-Bras, Director of the office of Management and Budget; and Hon. Luis Fortuño-Burset, Governor of Puerto Rico.

Defendants identified with the municipality include the Municipality of San Juan; Hon. Jorge Santini-Padilla (hereafter "defendant Santini"), Mayor of San Juan; and Miriam Heldman (hereafter "defendant Heldman"), Human Resources Director. The Hermandad de Empleados y Ramas Anexas (hereafter "HEO"), the Union which represents employees at the MBA, and its President Cristino López-Hance, were also included as defendants, as well as ABC Insurance Company.

As alleged in the Amended Complaint, plaintiff Marti-Novoa initiated her public employment with the Municipality of San Juan in 1990's as a career employee. Thereafter, she performed as advisor to the former governors under the PDP's administrations upon being transferred from her career position in consonance with the public employees'

personnel laws, to wit; the former governors' office, Sila Maria Calderón and Anibal Acevedo-Vilá.  On August 8, 2008, Marti-Novoa was appointed to a trust position with the MBA.[2]

On December 15, 2008, plaintiff received notice she was to cease as a trust employee and effective December 16, 2008, was to return to her former career position in the MBA pursuant to public employees' regulations.  However, on December 17, 2008, Marti-Nova was reassigned to the Office of Management and Budget attached to the Governor's Office, in a special employment assignment to work with at the request of the outgoing PDP governor Acevedo-Vilá.  At the change of power to the new elected NPP administration, through letter of January 23, 2009, plaintiff Marti-Novoa was informed her assignment with governor Acevedo-Vilá was terminated and she was sent back to her career position at the MBA.  Plaintiff reported then and there as purchasing agent.  At no time upon her reinstatement was plaintiff Marti-Novoa informed by the Human Resources Office or any other office she was to become a Union employee and had to pay Union fees or she would loose her job.  The Union did not notify plaintiff Marti-Nova either that she was now a Union employee and had to pay her dues.  An employment verification dated January 26, 2009, further indicated the amount of $15.00 was being deducted from plaintiff Marti-Novoa's salary to pay the Union dues and by February 6, 2009, the Union had included plaintiff Marti-Novoa in its medical plan without advising that, as a new Union employee, she had failed to pay her dues.

---

[2]  The MBA is a governmental instrumentality of the Commonwealth of Puerto Rico attached to the Department of Transportation and Public Works. P.R. Laws Ann. tit. 23, § 603; P. R. Laws Ann. tit. 3 App. III, § 3.

Without prior notice, plaintiff Marti-Novoa received a letter dated February 27, 2009, stating she was being terminated from her position effective March 2, 2009, for failure to comply with the collective bargaining agreement at the MBA and she had to request reinstatement to the Municipality of San Juan.  Although the MBA personnel indicated to plaintiff there was an agreement for reinstatement with the Municipality of San Juan, and even though plaintiff Marti-Nova had indicated her willingness to pay her Union dues, and upon filing a letter to the MBA and the Union as an appeal mechanism for the action undertaken, the Municipality indicated reinstatement obligation was for the MBA and Marti-Novoa would not be granted reinstatement to a career position with the Municipality.  Plaintiff Marti-Novoa continued to report to her position at the MBA, as she indicated through letters, but she was requested to leave and wait for notice by telephone. Plaintiff notified her employment situation by letters to the Secretary of Transportation and Public Works, to the Secretary of the Governor, and to the Municipality of San Juan, and their respective Human Resources Departments.  Neither the MBA nor the Union allowed plaintiff to remedy the non-payment of the dues nor did they previously warned Marti-Novoa that failure to do so would result in employment termination.

Plaintiff Marti-Novoa claims defendants have undertaken concerted action because of political discrimination in violation of her First Amendment rights, through a pretextual reason, as well as incurred in violation of her due process rights having a proprietary right to her career employment in public service.  In addition, plaintiff Marti-Novoa states these actions are also in violation of state laws and its constitution.

Diana Y. Marti-Novoa v. Rubén Hernández-Gregorat, et al
Civil No. 09-1355 (JAG-CVR)
Report and Recommendation
Page No. 5

Defendants the Municipality of San Juan, defendant Santini and defendant Heldman, as the Mayor and Human Resources Director of said municipality, respectively, filed a Motion to Dismiss the Amended Complaint for failure to state a claim.  Fed.R.Civ.P. 12(b)(6).  (Docket No.107).  Plaintiff Marti-Novoa filed an opposition.  (Docket No. 108).  A reply was thereafter filed by these co-defendants.  (Docket No. 130).

Defendants Mike O'Neill, substituting for Santos M. Delgado-Marrero, in his official capacity as President and General Manager of the MBA, and Gladys Fuentes also in her official capacity as Director of Human Resources of the MBA, filed a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) as to a Section 1983 civil rights violation for unlawful discrimination.  These co-defendants claim that, since plaintiff Marti-Novoa should have started paying her Union dues, as well as the officers under obligation to notify her of such duty were in 2008 also affiliates of the PDP, as of December 26, 2008, these co-defendants had no obligation or held any participation in the alleged concerted plan to discriminate by using non-payment of Union dues as a pretext.  When plaintiff was reinstated a second time to her career position at the MBA around January 26, 2009, she had not paid her Union dues by the date of letter of termination of February 27, 2009, that was to become effective February 27, 2009, being the first time Marti-Novoa indicated a willingness to comply with her obligations under the collective bargaining agreement to be a member of the Union to preserve her employment at MBA.  Defendants also indicate plaintiff Marti-Novoa appointment as purchasing agent in the MBA was made within the prohibited time span covered by the electoral ban, thus being null and void *ab initio*.  (Docket No. 118).

Co-defendants María Sánchez-Bras, Hon. Luis Fortuño-Burset, Rubén Hernández-Gregorat, Santos M. Delgado-Marrero, Gladys Fuentes-Cruz, and Juan Carlos Blanco, also filed a Motion to Dismiss Amended Complaint.  (Docket No. 120).

Remaining co-defendants Hermandad de Empleados de Oficina y Ramas Anexas, and its President Cristino López-Hance, (hereafter "Union defendants") filed a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6).  (Docket No. 127).  After an extension of time, plaintiff Marti-Novoa filed individual replies to co-defendants' requests for dismissal.  (Docket Nos. 139, 141).  Co-defendants for the Union filed a reply to plaintiff's response.   (Docket No. 153).

The issues raised by plaintiff Marti-Novoa on the preliminary injunction were held in abeyance pending resolution of the various requests for dismissal upon granting a motion to stay and parties were notified on November 23, 2009. ( Docket No. 163).  The Court referred the Motions to Dismiss at Docket Nos. 107, 118, 120, 127 to this Magistrate Judge for report and recommendation.  (Docket No. 164).

It is now proper to entertain the various co-defendants' grounds for dismissal.

## MOTION TO DISMISS STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

To elucidate a motion to dismiss the Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).  A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery

under some actionable theory." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir. 1996) (*quoting* Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)). The Court, need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss. Abbott, III v. United States, 144 F.3d 1, 2 (1st Cir. 1998) (*citing* Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)).

The Supreme Court most recent opinion changes the standard for a motion to dismiss so that plaintiff will now have to include more information in the pleadings if he/she wants to survive a 12(b)(6) motion. *See* Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007).[3] The First Circuit has already cited to this decision and has already noted this new standard in Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007), copied in part below:

> At the outset, we note that even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007). In so doing, the Court disavowed the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Twombly, 127 S. Ct. at 1969. The Court found that the "no set of facts" language, if taken literally, would impermissibly allow for the pleading of "a wholly conclusory statement of [a] claim," and that "after puzzling the profession [**8] for 50 [*96] years, this famous observation has earned its retirement." *Id*. at 1968, 1969.

---

[3]   No heightened fact pleading of specifics is required but only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic, 127 S.Ct. at 1974.

# LEGAL ANALYSIS

## A. Co-defendants Municipality of San Juan, co-defendant Santini and co-defendant Heldman[4] (Docket No. 107).

These municipal co-defendants request dismissal of the Amended Complaint under Fed.R.Civ.P. 12(b)(6) for plaintiff's failure to state a claim upon which relief may be granted. The original complaint filed by plaintiff Marti-Novoa was dismissed by the Court, granting additional time for the filing of an Amended Complaint, which is now before the Court. The Amended Complaint submits, as a cause of action as to municipal co-defendants above, that plaintiff Marti-Novoa initiated her public employment with the Municipality of San Juan and during the 1990's acquired a property interest as a career employee. Allegations as to Mayor Santini is of being a well-known activist of the NPP. Co-defendant Heldman occupies the position of Director of Human Resources of said Municipality. *Amended Complaint ¶¶20, 21, 22.*

In the year 2009, when plaintiff Marti-Novoa received notice she was being terminated from her position by another government agency of the Commonwealth of Puerto Rico (the MBA), for failure to comply with the collective bargaining agreement and paying Union dues, she was informed by the MBA that reinstatement was to be requested to the Municipality by March 2, 2009. *Amended Complaint ¶25.* MBA's Director of Human Resources, not from the Municipality of San Juan, informed plaintiff she had reached an agreement to have her reinstated in employment by the Municipality. *Id. ¶42.*

---

[4] Defendants' opposition clarified the name in the Amended Complaint incorrectly spells Ms. Heldman's last name.

Upon requesting reinstatement with the Municipality, co-defendant Heldman informed plaintiff the reinstatement obligation was of the MBA and not for the Municipality to grant her a career position. *Id. ¶48.* Plaintiff Marti-Novoa notified the MBA of the situation, indicating she would continue to report daily to the MBA as a purchasing agent until the matter was resolved. She provided copy of her letter to the MBA and her position also to the Human Resources Office of the Municipality. *Amended Complaint ¶51.* Plaintiff Marti-Novoa claims the Municipality defendants' failure to respect her reinstatement rights were consequence of a discriminatory animus because of her political affiliation to the PDP. *Id. ¶52.*

Succinctly, it is the municipal co-defendants' contention that no factual allegation in the Amended Complaint suffices to support any discriminatory animus against plaintiff nor their personal involvement in any discriminatory act. A perusal of the Amended Complaint and the applicable law favors these municipal co-defendants in their personal capacity. However, the relief requested as the possible reinstatement of plaintiff Marti-Novoa to a career position would rather fall as to these co-defendants solely in their official capacity and for injunctive relief.

Plaintiff Marti-Novoa's opposition argues against the Ashcroft rationale in that a plaintiff need not see the action dismiss at this juncture and prior to discovery, contrary to the evidentiary requirements of prevailing on the merits, if there is a plausible involvement of the co-defendants with the inappropriate dismissal and the discriminatory actions

claimed. Plaintiff also submits these co-defendants' arguments have indeed shifted the burden, in a way of a summary judgment motion, requiring assessment of the Court on their articulated non-discriminatory basis for the adverse employment action.

An examination of the Amended Complaint solely indicates the municipal co-defendants failed to reinstate plaintiff Marti-Novoa to a career position, after she was told by another central government agency, the MBA, the Municipality was to undertake. The Municipality in turn indicated it was the obligation of the MBA. No personal actions are attributed to these municipal co-defendants, either Santini nor Heldman, in a discriminatory way except for a general claim that the Mayor of San Juan (Santini), is an NPP affiliate. Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d at 95-96.

Regardless of all arguments raised by plaintiff Marti-Novoa in opposition, there is no factual allegation in the Amended Complaint, except for not having allowed her reinstatement when she had requested same around March 2009. This event, together with a claim that co-defendant Santini is an NPP known affiliate, would not allow relief from municipal co-defendants Santini or Heldman, in their individual capacity, not as lack of *prima facie* of a discriminatory reason, which it is lacking, and not under a heightened pleading standard for the complaint, but rather for not even providing defendants at least fair notice of the claim and the grounds upon which it rest. More so, a sufficient complaint must contain allegations plausibly suggesting, not merely consistent with, entitlement to relief. *See* Remexcel Managerial Consultants, Inc., v. Arlequin, 583 F.3d 45 (1st Cir. 2009).

In summary, plaintiff should adequately plead the elements of her cause of action as to these co-defendants and is expected to put her best foot forward in an effort to present

a legal theory that will support the claim and sustain recovery under some actionable theory. Mere juxtaposing that plaintiff was a member of the opposing party and the co-defendants were affiliated with the controlling party would be insufficient, standing alone, to create a causal link of political discrimination. The allegations in the Amended Complaint as to adverse employment action, by municipal co-defendants' denial to reinstate to a career position with the Municipality indicating the obligation fell instead with the central government agency, the MBA, does not minimally link political considerations having any bearing with same, failing to even frame at this stage a viable constitutional claim against co-defendants Santini and Heldman in their personal capacities.

At this stage of proceedings and with the parties' submissions, this Magistrate Judge deems unnecessary to discuss the motion to dismiss vis a vis one for summary judgment as argued by plaintiff under the burden shifting arguments. A motion to dismiss is not an occasion to prove or disprove the facts in the Amended Complaint but one in which the Court assumes that all facts properly and adequately alleged in the complaint are true and makes all reasonable inferences from those facts in plaintiff's favor. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).[5]

There is no controversy that plaintiff Marti-Novoa has the right to associate with a political party of her choice as an integral part of her constitutional rights and the First Amendment. To prevail on a claim of political discrimination, a public employee must show at a minimum that she engaged in a constitutionally-protected conduct, and that this

---

[5] Alternative Energy, Inc. V. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (in ruling on a motion to dismiss, a court must accept as true all the factual allegations in the complaint construe all reasonable inferences in favor of the plaintiff).

conduct was a substantial factor in the adverse employment action.  As such, her factual assertion must be sufficient to demonstrate a causal connection linking defendants alleged discriminatory acts with plaintiff's political beliefs or association.  All plaintiff Marti-Novoa has indicated in the Amended Complaint is that co-defendant Santini, and presumably co-defendant Heldman, is an active affiliate of the NPP party and that plaintiff, on the other hand, is an active affiliate of the PDP.  The failure to have her reinstated to a career position she held in the 1990's with the Municipality, upon her request in March of 2009,  in the light of the events described in the Amended Complaint, is to be presumed to have resulted from a discriminatory animus.

At a motion to dismiss level, even after Twombly, wherein a complaint is not required heightened fact pleadings but only enough facts to state a claim to relief that is plausible on its face, plaintiff would be considered not to have nudged claims across the line from conceivable to plausible, for which the Amended Complaint as to co-defendants Santini and Heldman in their personal capacities, should be dismissed.  Twombly, 550 U.S. at 570, 127 S. Ct. at 1955.

It is thus recommended that, as to co-defendants Santini and Heldman, in their personal capacities, their motion to dismiss be GRANTED and be DENIED as to these co-defendants official capacity for purposes of injunctive relief.

The Municipality of San Juan has also sought dismissal, for which to be considered liable, plaintiff must establish that a municipal policy or custom was the moving force behind the constitutional violations alleged.  See Cordero v. De Jesús-Méndez, 867 F.2d 1, 7 (1st Cir. 1989).  In Puerto Rico, actions of a mayor constitute the official policy of the

municipality.[6]   A local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents.[7] As such, the individual defendants, Santini and Heldman acting on their behalf, must have committed acts in detriment of plaintiff that could establish entitlement to relief because of political discrimination against the Municipality of San Juan.

No individual acts were committed by co-defendants Santini and Heldman, as above discussed.  As such, the request for dismissal of claims in the Amended Complaint for any monetary relief, as to the co-defendant Municipality of San Juan, although not for any eventful injunctive relief that may become appropriate, is recommended to be GRANTED.[8]

## B.  Co-defendants Mike O'Neill, substituting for Santos M. Delgado-Marrero, and Gladys Fuentes (the MBA's co-defendants)  (Docket No. 118).[9]

These co-defendants request dismissal of the complaint under Fed.R.Civ.P. 12(b)(6) making appearances thereunder in their official capacities as the actual President and General Manager of the MBA and its Director of Human Resources, respectively.

Plaintiff Marti-Novoa made claims against the MBA's co-defendants for failing to

_____

[6]  Municipalities may be sued directly under Section 1983 for civil rights violation claiming monetary, declaratory or injunctive relief.  Monell v. City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018 (1978).

[7]  Pembaur v. City of Cincinnati, 475 U.S. 469, 106 s.Ct. 1292 (1986) (municipalities are liable only where deliberate choice to follow a course of action si made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question).

[8]  These co-defendants' reply (Docket No. 130) further states the Amended Complaint's failure to show any personal involvement of Santini or Heldman in the alleged deprivation of plaintiff Marti-Novoa's rights.

[9]  Docket No. 39, co-defendants Delgado-Marrero and Gladys Fuentes submitted a request for dismissal in their official capacities as President and General Manager of AMA and as Director of Human Resources, respectively.  The same ruling in regard to denial of dismissal as to these co-defendants would follow and is discussed as to Héctor O'Neill, who substituted Delgado-Marrero as the now President of AMA.  Similarly, Gladys Fuentes' request is to be denied, consonant with the discussion in this report and recommendation.  (Docket No. 39).

reinstate her to the career position as a public employee because of political discrimination and using as pretext the failure to pay her Union dues, which they never notified her and even issued an indication that these dues were being deducted from her payroll. Even after indicating she would be willing to comply with the payment of all Union dues, these MBA's defendants, under the pretext of a violation to the collective bargaining agreement, refused plaintiff Marti-Novoa's reinstatement as a purchasing agent. Most recently, the MBA's defendants also stated the designation to a career position was made within a prohibited time span during the electoral ban, which was never notified or informed to plaintiff.

The MBA co-defendants submit the Amended Complaint is devoid of factual allegations, with the necessary elements to sustain recovery under allegations of political discrimination by the MBA.

It is uncontested that plaintiff Marti-Novoa and these co-defendants belong to opposite political parties, although it is acknowledged this would be insufficient to establish a *prima facie* case of political discrimination. The MBA, as a public corporation of the Commonwealth of Puerto Rico, must be shown to have violated plaintiff's constitutional rights through its designated official with final policy-making authority or through a use or custom that is well settled. Monell, 436 U.S. at 691; City of St. Louis v. H. Praprotnik, 485 U.S. 112, 128-131, 108 S.Ct. 915, 926-928 (1988). Co-defendants also make reference to the Mt. Healthy defense[10] in that defendant may establish it would have taken the same action regardless of plaintiff's political belief. Towards this last issue, the MBA's defendants

---

[10]   Mt. Healty City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977); Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998).

submit documentation with their motion to dismiss, such as the collective bargaining agreement in force requiring payment of Union dues; letter dated February 2, 2009 from Cristino López-Hance, Union President, notifying the employer at the MBA plaintiff's non-payment of dues; letter dated December 8, 2008 from plaintiff to the MBA President Carlos E. Cortés-Díaz, requesting reinstatement to her career position effective December 16, 2008. *Deft's, Exhibits 2-5.*

The MBA co-defendants submit the Amended Complaint, in addition to the former discussed factual scenario, as reflected in the background above. *Amended Complaint ¶¶ 24-25.* Thus, plaintiff Marti-Novoa, after initiating her public employment with the Municipality of San Juan, holding trust positions thereafter with the Governors' Office of both PDP administration governors in trust positions, was appointed to the MBA on August 13, 2008 to a trust position as Special Assistant to the President of the MBA. *Id. ¶27.* On December 15, 2008, plaintiff Marti-Novoa was advised she would cease working in the trust position effective December 16, 2008 and be reinstated to a career position with the MBA as purchasing agent. *Id. ¶¶ 29-30.* However, on December 17, 2008, she was reassigned to a trust position in special assignment to the Office of Former Governors to work with outgoing Governor Acevedo-Vilá. *Amended Complaint ¶31.* On January 23, 2009, plaintiff was terminated from her assignment and sent back to her career position with the MBA. *Id. ¶¶32-33.*

Co-defendants MBA further state the Amended Complaint submits that the Union never notified plaintiff a request for dismissal for failure to pay Union dues nor did the MBA notify her such a request. *Id. ¶¶ 39-40.* Plaintiff's allegation that, not allowing her to

correct the non-payment of dues, as per her written requests, was but a pretext for dismissal for political reasons as part of a concerted plans.  Amended Complaint ¶¶45-46, 56, 60-62. Plaintiff Marti-Novoa also submitted there are no written guidelines at the MBA or forms issued to employees for the authorization to make Union dues.  *Id. ¶65.*

The MBA's co-defendants submit plaintiff has not contravened that her career position with the MBA required affiliation with the Union and payment of Union dues within ten (10) days from appointment to a position under the collective bargaining agreement.

Since at the time plaintiff Marti-Novoa was originally reinstated to the career position at the MBA on December 15, 2008, the President of MBA and its personnel at issue which held trust positions were from the PDP administration, the same one asserted by plaintiff, and it should be considered they were the ones who, if anyone was obliged to do so, failed to advise her of the requisite to affiliate with the Union and pay the dues.[11]  Under this factual scenario as presented in the Amended Complaint, co-defendants assert plaintiff has not established a *prima facie* case of political discrimination as to them and the MBA also has a valid non-discriminatory reason to terminate her from employment.

The MBA co-defendants' contentions are unsupported for dismissal to be granted in their official capacities.  Not only are they to be held in this lawsuit subject to the possibility of injunctive relief if plaintiff prevails on the merits for the purpose of

---

[11]  These MBA's co-defendants fail to discuss that by 2008 plaintiff Marti-Novoa was immediately reassigned to work outside the MBA and it was not until January of 2009, she was again assigned to a career position in said agency.

reinstatement, but taken the factual allegations of the complaint as true, these are sufficient for the claim of discrimination and presentation of a pretext. Plaintiff established she has a well known employment history of trust positions with the PDP prior to the change of administration by the NPP. The NPP affiliates being sued were well aware that plaintiff Marti-Novoa was entitled to a career position once her trust positions were terminated.

The Amended Complaint provides plaintiff Marti-Novoa was not notified by the MBA, defendants in their official capacity nor the Union that she would face dismissal for lack of payment of dues. *Amended Complaint ¶¶36, 39, 40*. Plaintiff even asserts a payroll statement was provided indicating dues in the amount of $15.00 were being withheld. Upon notice of termination, plaintiff was not allowed to make the corresponding payments for the less than two-months Union dues from January 2009 through the date of notice of termination on February 2009, that was to be effective March of 2009.

Plaintiff Marti-Novoa has also asserted in the Amended Complaint that, upon reassignment to the career position, Nora Gómez at the MBA (who was going to train her in the career designation as purchasing agent) was told not to concern herself since plaintiff's time with the agency was numbered, revealing an overall plan to remove plaintiff from public service. *Amended Complaint ¶35*. There is no letter notifying plaintiff of her obligation to pay Union dues or warning that such failure to pay would result in dismissal from employment. *Id. ¶43*. To the contrary, an employment verification dated January 26, 2009, from the President Special Assistant of the MBA, Judith A. Morales, indicated the amount of $15.00 was being deducted from plaintiff's salary to pay Union dues. *Id. ¶44*.

Without any prior notice plaintiff was notified she was being terminated from her

position effective March 2, 2009, for failure to comply with the collective bargaining agreement. *Id. ¶42.* The request for reconsideration sent on March 2, 2009, to defendant the MBA indicating she had not received any orientation in regard to Union dues, her discussion with the Human Director, co-defendant Gladys Fuentes-Cruz, or plaintiff's willingness to pay the dues then, were unavailing to set aside the dismissal. *Amended Complaint ¶¶ 46-48.* Discussion with the MBA that she held a proprietary right to a career position and was to report daily for work were also dismissed by the co-defendants. Id. ¶52-53. All plaintiff Marti-Novoa received from the MBA's defendants was notice that the decision to dismiss was being affirmed and no opportunity to cure the non-payment of dues was allowed. *Id. ¶57.*

In the history of the MBA, no new employee has ever been dismissed from a career position for failure to pay Union dues. *Amended Complaint ¶55.* Neither has the Union requested the dismissal of a new career employee for failure to pay the dues. *Id. ¶56.* More so since the Union does not have a formal written guideline or forms for new employees' authorization to make Union dues withholdings. *Id. ¶58.*

As such, under these factual allegations in the Amended Complaint, with MBA being a small agency whose members' political affiliations are well known, plaintiff Marti-Novoa submits removal from employment in a career position is conduct rooted in political discrimination and violation of constitutional rights, state and federal.

Plaintiff Marti-Novoa's pleadings in the Amended Complaint as to the MBA's co-defendants have established the necessary factual allegations for a politically motivated employment action in detriment of plaintiff. More so since a career employee is held to be

entitled also to a pre-determination hearing or opportunity before the adverse employment decision is undertaken.  With this scenario, there is more than a plausible averment in the Amended Complaint the reasons for termination, even if circumstantial, seem pretextual.[12]

In regards to these co-defendants' proposition that plaintiff Marti-Novoa's appointment to a career position was null and void *ab initio* for having been made during the electoral ban period, this proposition was never presented as reasons for dismissal from her MBA position, rather, the failure to pay Union dues. When an employer, at different times, gives different and arguably inconsistent explanations for terminating an employee, a jury may infer that the articulated reasons were pretext for discrimination. *See* Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000).[13]

In view of the above, it is recommended that the Motion to Dismiss by co-defendants Mike O'Neill, substituting for Santos M. Delgado-Marrero and Gladys Fuentes (MBA's co-defendants) in their official capacity be DENIED. (Docket No. 118).

---

[12]  However, the record shows plaintiff Marti-Novoa has failed to submit an opposition to this the MBA's co-defendants' motion to dismiss since by mistake it had filed at Docket No. 140, although entitled opposition, a copy of the Amended Complaint. The Clerk of the Court then placed a notation as to said document as being filed in error and plaintiff never re-filed its intended opposition.  The MBA defendants sought the document be stricken, which the Court granted. *Docket Nos. 143, 144.*

[13]  At the level of summary judgment plaintiff, who would have established a *prima facie* case, will be allowed to have the fact finder infer the defendant's reason for adverse employment action is pretextual since the same evidence used to show pretext can support a finding of discriminatory animus.  Straughn v. Delta Air Lines, Inc., 250 F.3d 23 (1st Cir. 2001); Dichner v. Liberty Travel, 141 F.3d 24, 30 (1st Cir. 1998)

## C.   Co-defendants María Sánchez-Bras, Hon. Luis Fortuño-Burset, Rubén Hernández-Gregorat, Santos M. Delgado-Marrero, Gladys Fuentes-Cruz and Juan Carlos Blanco (Docket No. 120).

Co-defendants above have requested dismissal in their official and personal capacities, except for Delgado-Marrero and Fuentes-Cruz, who filed separate motions to dismiss in their official capacities wherein now President of the MBA in lieu of Delgado-Marrero appeared in his official capacity. (Docket No.118).

### 1.  Failure to State a Cause of Action.

Insofar as these co-defendants, the Amended Complaint submits no prayer of relief in particular, except as to co-defendants Santos M. Delgado-Marrero, who was the former President of the MBA and is being sued in his personal and official capacity and co-defendant Gladys Fuentes-Cruz, who was the Vice President of Human Capital at the MBA, appointed by Delgado-Marrero.[14]

A perusal of the Amended Complaint fails to show plaintiff Marti-Novoa addressed any particular discriminatory action undertaken by these co-defendants, who for the most part were identified as belonging to the NPP, without more.  The averments are limited in that defendant Fortuño is presently affiliated to the NPP, and serves as president of the same.  *Amended Complaint ¶5.*  Defendant Juan Carlos Blanco, named by defendant Fortuño, has occupied the position of the Governor's Chief of Staff and is presently affiliated

---

[14]   The now President of MBA, Mr. Mike O'Neill, already made an appearance in his official capacity as above discussed.  These co-defendants, in their official capacities, that is, Mr. O'Neill and Ms. Fuentes-Cruz, are being addressed as the MBA's defendants above.

to and/or sympathizer of the NPP.  Id. ¶¶6-7.  Defendant María Sánchez-Bras, named by defendant Fortuño, has headed the Office of Management and the Budget and is presently affiliated or a sympathizer of the NPP.  *Id. ¶¶8-9, 17.*[15]

Insofar as co-defendant Sánchez-Bras, the Amended Complaint submits that plaintiff's trust appointment assigned to former governor Acevedo-Vilá was terminated and she was sent back to a career position at the MBA.  *Amended Complaint ¶33.*  This act, seemly attributed to co-defendant Sánchez-Bras, stems from plaintiff Marti-Novoa having previously been specially assigned "on destaque" to the Office of the Former Governors to work with and at the request of outgoing PDP Governor Acevedo-Vilá.  *Amended Complaint ¶31.*  Even if co-defendant Sánchez-Bras sent the letter referred to in the Amended Complaint for plaintiff Marti-Novoa's return to a career position, there is no plausible discriminatory act attached to said action, except for plaintiff's construing same, without more, as a concerted plan by defendants to remove her from a career position.  *Id. ¶32.*

Under the rationale that in considering dismissal plaintiff's well pleaded factual averments are to be considered as true, the Court need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss.  Abbott, III v. United States, 144 F.3d 1, 2 (1st Cir. 1998).

Co-defendants Rubén Hernández-Gregorat and Juan Carlos Blanco are identified as individuals to whom plaintiff Marti-Novoa mailed letters informing them of her

---

[15]   Although the paragraph in the Amended Complaint at ¶16 referred to Gladys Fuentes-Cruz, at ¶17 the averment of affiliation and/or sympathizer of the NPP is attributed to defendant Sánchez-Bras.

employment situation after she had been informed by the MBA on March 2, 2009, as to the adverse employment action.  These co-defendants, Hernández-Gregorat and Blanco's participation in the events referred by plaintiff Marti-Novoa, is seemly, although not even alleged, that had they received the letters sent by plaintiff, they failed to address receipt of these communication in any way or take any action.[16]  Even plaintiff Marti-Novoa's opposition refers to no direct averment indicating the participation of Governor Fortuño, except that co-defendant Sánchez-Bras does report to the Governor and that plaintiff wrote to the Chief of the Governor's Staff, co-defendant Blanco, to complaint of the situation. *Opposition, Docket No. 141, ¶15.*

The causes of action one and two against above named co-defendants, as well as state claims in the third cause of action, even under the mantra that all allegations contained thus far are repeated and incorporated, alleged in the Amended Complaint, are not well-pleaded nor have a plausible relation to the discrimination claimed.[17]  *Amended Complaint, First and Second Cause of Action.*

Defendants have also raised arguments of entitlement to Eleventh Amendment immunity in their official capacity.  However, upon having found lack of a cause of action as to above co-defendants for no personal involvement being pleaded in the Amended

---

[16]  Plaintiff sent a letter to Rubén Hernández-Gregorat, Secretary of Transportation and Public Works, on March 6, 2009, informing of her situation and requesting him to stop the irreparable harm that was being caused to her. *Amended Complaint ¶54.* Plaintiff sent a letter on same date to the Secretary of the Governor, Hon. Juan Carlos Blanco, advising him the MBA was engaging in political discrimination and requesting him to stop the irreparable harm that was being caused to her. *Id. ¶55.*

[17]  This plausibility is however applicable to co-defendants Santos M. Delgado Marrero, former President of the MBA, and Gladys Fuentes Cruz, the Vice President of Human Capital at the MBA, who were factually involved in the process of termination of Marti-Novoa's career appointment and their actions are fully elaborated.

Complaint, the Eleventh Amendment immunity requires no further discussion. *Motion to Dismiss, Docket No. 120, pp. 2-6.*

Accordingly, it is recommended that the Motion to Dismiss as to co-defendants Hon. Luis Fortuño-Burset, María Sánchez-Bras, Rubén Hernández-Gregorat and Juan Carlos Blanco, in their individual and official capacity, be GRANTED.

**2. Qualified Immunity.**

Qualified immunity was also raised by co-defendants since public officials may be immune from liability in their personal capacity if their conduct does not violate clearly established statutory or constitutional rights.  The only remaining co-defendants who may raise such an immunity consonant with above discussions are Delgado-Marrero and Fuentes-Cruz.

At a motion to dismiss, the allegations of the complaint, taken as true, establish constitutional violations of plaintiff Marti-Novoa constitutional rights and these rights were clearly established at the time she was subject of adverse employment action, for which a reasonable official should have known, qualified immunity submitted is insufficiently established. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982); *see* Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692 (1999).

As discussed above in regards to the MBA's defendants, plaintiff Marti-Novoa has pleaded she was dismissed under the pretext of failure to pay Union dues because of a discriminatory animus.  Plaintiff has further alleged she was provided with even a false official certification that Union dues were being deducted from her payroll.  Plaintiff was referred to defendants Delgado-Marrero and Fuentes-Cruz as a career employee who was

to be reinstated and who held a property right in public employment.   There are controversies of material fact as to the pretextual reason provided for adverse employment action, as well as the underlying motives.   The motivation element of the constitutional claim does not disappear at the qualified immunity stage.   *See* Mihos v. Swift, 358 F.3d 91, 99, 106-107 (1st Cir. 2004); Acevedo García v. Vera-Monroig, 204 F.3d 1, 12 (1st Cir. 2000).

Upon the existence of such controversies, qualified immunity cannot be adjudicated nor is appropriate at this juncture as to the constitutional violations nor as to Section 1983 claim as to co-defendants Delgado-Marrero and Fuentes-Cruz since the Amended Complaint, which is to be taken as true, contains more than bare allegations as to them in support of the claimed constitutional tort.[18]

In light of the above discussed, it is recommended that the Motion to Dismiss of these co-defendants be GRANTED IN PART AND DENIED IN PART as follows:

(1) dismissal as to co-defendants Hon. Luis Fortuño-Burset, María Sánchez-Bras, Rubén Hernández-Gregorat, and Juan Carlos Blanco, in their personal and official capacity, be GRANTED;

(2) dismissal as to co-defendants Santos M. Delgado-Marrero and Gladys Fuentes-Cruz, in their individual/personal capacity, should be DENIED;

(3) qualified immunity requested by above surviving co-defendants Santos M. Delgado-Marrero and Gladys Fuentes-Cruz, because of controversies of material fact, at this juncture, should be DENIED.

---

[18]   The Court of Appeals considers to lack jurisdiction over a district court's conclusions that genuine issues of material fact existed as to official's motives in retaliating against employees.   Rivera-Jiménez v. Pierluisi, 362 F.3d 87 (1st Cir. 2004).

### D.     Co-defendants Hermandad de Empleados de Oficina y Ramas Anexas and Cristino López-Lance (the Union co-defendants) (Docket No. 127).

The Union defendants submit the Amended Complaint alleges they acted in concert with the government defendants to breach plaintiff's constitutional rights and terminate her public employment under pretextual reasons, the non-payment of Union dues, as well as for having breach a fiduciary duty of fair representation owed to incoming bargaining members. *Amended Complaint ¶1, 18.*

As to the duty of fair representation, these defendants submit <u>Vaca v. Sipes</u>, 386 U.S. 171, 87 S.Ct. 903 (1967) and <u>Airline Pilots Assn. Int'l. v. O'Neill</u>, 499 U.S. 65, 111 S.Ct. 1127 (1991) preclude such claim for their action does not arise to the level of unreasonableness or irrationality.

The allegations in the Amended Complaint applicable to the Union defendants is that at no time since plaintiff Marti-Novoa was reinstated from a trust position to the MBA around August 2008 was she provided with copy of the collective bargaining agreement. Because of her previous long term history of trust positions in public employment, plaintiff acknowledges she never occupied a position covered by a collective bargaining agreement. Plaintiff was under the impression she had become a member of the Union without need of any further action, that her Union fees would be deducted from her paycheck and that the MBA had even issued an employment verification showing the amount of $15.00 was being deducted from her salary on a monthly basis for her Union dues. *Amended Complaint ¶¶57-58.*

The Amended Complaint submits that no Union defendant formally notified plaintiff Marti-Novoa that she was now a Union employee who had to pay Union dues or loose her job. *Id. ¶¶36-37.* Nor did the Union sent plaintiff any notice as was sent to the employer MBA requesting her dismissal from employment for failure to pay Union dues. *Id. ¶¶39-40.* Furthermore, neither did the Union nor the MBA's defendants allowed her to remedy the non-payment of the Union dues since she had indicated a willingness to cover same. These actions are considered as concerted plan between the Union and the MBA defendants to dismiss her from employment because of political reasons and also a breach of fair representation by the Union.

The Union defendants submit the constitutional violations alleged by plaintiff as to private institution, not government agents, are not encompassed under "color of law" or "state action". Labor organizations, such as the Union, are traditionally considered private, not public entities. Hovan v. United Brotherhood of Carpenters and Joiners of America, 704 F.2d 641, 642 (1st Cir. 1983). Solely upon allegations of a conspiracy with state actors, will plaintiff's alleged constitutional violations fall on private parties. The only assertion of such a conspiracy is plaintiff Marti-Novoa's contention of a concerted action between the parties, without any factual predicate to sustain same, resulting in a subjective and conclusory allegation that will not survive dismissal.

The Union correctly addresses the Amended Complaint's failure to attribute to the Union defendants any affiliation with a particular political party, which would be clearly defeated by common reason that unions are comprised of all employees in an appropriate unit as identified by a collective bargaining agreement regardless of any other subjective

consideration.  Thus, we opine the Amended Complaint has failed to state a claim for a constitutional violation as to the Union defendants against plaintiff Marti-Novoa.

Regarding breach of fair representation as a separate cause of action against the Union defendants, plaintiff Marti-Novoa needs to establish under the <u>Vaca</u> rationale the breach stems from actions that were arbitrary, discriminatory or in bad faith.  Such actions need to be outside a wide range or reasonableness as to be irrational.  Defendants further argue the Amended Complaint has not pleaded plaintiff indeed notified the Union with the letter provided to co-defendant Delgado-Marrero on March 2, 2009, asking for reconsideration of the decision to terminate her from employment and that she intended to become an appeal.   Neither is there any mention that the letter of March 18, 2009, to Delgado-Marrero, wherein plaintiff indicated her willingness to become a Union member and pay her dues, was sent to the Union.  The only reference in the Amended Complaint to a letter sent to the Union was the one of March 3, 2009, also addressed to Delgado-Marrero.  As such, not only did plaintiff Martin-Novoa never notified the Union or requested reconsideration as to the payment of dues by letter, but she did not exhaust any of the grievance proceedings that existed under the collective bargaining agreement.  The collective bargaining agreement provided for dismissal of employees for failure to pay Union dues and it was not after sixty (60) days from her appointment to a bargaining unit position that plaintiff informed about her willingness to pay dues.  Since plaintiff Marti-Novoa did not initiate a grievance in regards to the Union, no duty of fair representation could have been breached.

Plaintiff Marti-Novoa's opposition submits dismissal not appropriate of the Union defendants' claims in the Amended Comlaint since said defendants' request to the employer for the employment termination for failure to pay dues is not consonant with abundant case law that prior notice of the delinquency and opportunity to remedy the arrears should have been allowed.  (Docket No. 139)

Still, as to non-payment of Union dues and the breach of duty of fair representation, the Union under the existent collective bargaining could demand payment as a condition of employment.  The examination of both parties' contentions in regard to the Union defendants leads to a conclusion the concerted action for a constitutional rights conspiracy violation are not well pleaded and lacks a plausibility required to survive dismissal.

When a plaintiff alleges a breach of duty of fair representation, such a claim is one cognizable in the first instance in the federal court, for which exhaustion of grievance proceedings are not necessary.  Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 43-44, 119 S.Ct. 292 (1998); Quick v. N.L.R.B., 245 F.3d 231, 246, n. 12 (1st Cir. 2001).

A labor union breaches its duty of fair representation owed to its members by acting discriminatory, in bad faith, or arbitrarily toward its members.  Emmanuel v. International Broth. Of Teamsters, Local Union No. 25, 426 F.3d 416 (1st Cir. 2005).  However, the duty of fair representation in that the Union is claimed in the Amended Complaint to have failed to provide plaintiff Marti-Novoa since the onset with notice of the applicable collective bargaining agreement raises some factual controversies that would not entail dismissal as appropriate at this time.  Furthermore, the Union did provide the employer a letter dated February 2, 2009 requesting the employee Marti-Novoa, who had appeared to request the

Union to participate in the medical plan on January 21, 2009, be dismissed for failure to pay Union dues. *(Exhibit 2)*.   Not only this letter was not notified to plaintiff Marti-Novoa as alleged in the Amended Complaint, but neither is there any explanation as to why the Union did not avail itself of the opportunity to notify Ms. Marti-Novoa, by January 21, 2009, when she appeared there, that her dues were not up to date.  In conclusion, from the allegations of the Amended Complaint and defendant's own averments, the Union failed to notify its required member as to dues withholding, of the lack of payment of Union dues in a timely fashion, and the possible consequence of loss of employment,  as well as provide an opportunity to remedy those arrears.

The Amended Complaint also avers these Union's dues at issue, which were to be paid monthly, were claimed to be remedied by plaintiff Marti-Novoa sixty (60) days after her career appointment to a Union position.  The claimed arrears were merely  a second installment, amounting to fifteen dollars ($15.00) monthly for a total of thirty dollars ($30.00) of Union dues, which caused the loss of a public career employment to plaintiff Marti-Novoa at the MBA. *See* Battle v. Brotherhood of Ry. & S.S. Clerks, Freight Handlers, 320 F.2d 742 (C.A.D.C. 1963);[19] International Union of Electrical, Radio and Machine Workers v. National Labor Relations Board, 113 U.S.Appd.C. 342, 346, 307 F.2d 679, 683 (C.A.D.C. 1962).

---

[19]  "From the beginning of his employment, the union which can require his membership or command his discharge is therefore charged with an obligation of fair dealing which includes the duty to inform the employee of his rights and obligations so that the employee may take all necessary steps to protect his job.  A union may not treat as adversaries either its members or those potential members whose continued employment is dependent upon union membership." Battle, 320 F.2d at 745.

An affirmative fiduciary duty to inform beneficiaries arises if there is some particular reason that the fiduciary should have known that the failure to convey information would be harmful.  A Union may not ask an employer to terminate an employee for failure to pay Union dues unless it first notifies employee of amount of dues owed, method for calculating dues owed and deadline for payment *See* N.L.R.B. v. Local 1445, United Food & Commercial Workers Intern., 647 F.2d 214 (1st Cir. 1981).  When a Union attempts to enforce its security clause, it should provide advance notice to members before causing an employer to discharge them for failure to pay union dues.  *See* Radio-Electronics Officers Union (Radio Officers Union v. N.L.R.B., 16 F.3d 1280, 1286 (3d Cir. 1994); Communications Workers Local 9509 (Pacific Bell), 295 v. N.L.R.B. 196 (1989).[20]

Accordingly, the Motion to Dismiss by the Union defendants should be GRANTED IN PART and DENIED IN PART, to wit;

1)   the request to dismiss the Amended Complaint claim against the Union defendants for breach of fair representation should be DENIED;

2) the requested dismissal by the Union defendants as to constitutional violations under a theory of concerted action should be GRANTED.

## CONCLUSION

In summary, this Magistrate Judge recommends, in accordance with the above discussion of the individual defendants' requests for dismissal, as follows:

---

[20]   *See* Non-payment of dues in public employment may result a violation of personnel laws since discharges must be "for cause".  See Wayne F. Foster, J.D., *Union Security Arrangements in State Public Employment*, 95 ALR3d 1102 (1979).

1. The Motion to Dismiss by co-defendants Municipality of San Juan, Hon. Jorge Santini and Myriam Heldman (Docket No. 107) be GRANTED IN PART AND DENIED IN PART, to wit:

a) dismissal as to Hon. Jorge Santini and Myriam Heldman, in their personal capacities, be GRANTED and be DENIED as to these co-defendants official capacity for purposes of any injunctive relief;.

b) dismissal as to the co-defendant Municipality of San Juan, regarding any monetary-relief claims, although not for any eventful injunctive relief that may become appropriate, be GRANTED.

2. The Motion to Dismiss by co-defendants Mike O'Neill, substituting for Santos M. Delgado-Marrero and Gladys Fuentes (MBA's co-defendants) in their official capacity be DENIED. (Docket No. 118).

3. The Motion to Dismiss by co-defendants Hon. Luis Fortuño-Burset, María Sánchez-Bras, Rubén Hernández Gregorat, and Juan Carlos Blanco, in their official and personal capacity and by co-defendants Santos M. Delgado-Marrero and Gladys Fuentes Cruz, in their personal capacity, (Docket No. 120) be GRANTED IN PART AND DENIED IN PART, to wit:

(a) dismissal as to co-defendants Hon. Luis Fortuño-Burset, María Sánchez-Bras, Rubén Hernández-Gregorat and Juan Carlos Blanco, in their official and personal capacity, be GRANTED;

(b) dismissal as to co-defendants Santos M. Delgado-Marrero and Gladys Fuentes-Cruz, in their individual capacity, be DENIED;

(c) qualified immunity requested by co-defendants Delgado-Marrero and Fuentes-Cruz, because of controversies of material fact, at this juncture should be DENIED.

4.  The motion to dismiss by co-defendants Hermandad de Empleados de Oficina y Ramas Anexas, Cristino López-Lance, (the Union defendants) (Docket No. 127) be GRANTED IN PART AND DENIED IN PART, to wit:

(a) dismissal requested as to claims for constitutional and state torts and under pendent state claims in the Amended Complaint be GRANTED;

(b) dismissal requested for claims of breach of duty of fair representation be DENIED.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation.  Amended Fed. R. Crim P. 59 (b)(2).  *See also* Amended Local Rules. [21] Failure to file same within the specified time waives the right to appeal this order.  Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).  *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

---

[21]  Local Rule 72 (d), as amended December 3, 2009 provides:
   **(d)  Objections to Report of Proposed Findings and Recommendations as to Dispositive Motions and Prisoner Cases.**
   Any party may object to the magistrate judge's report of proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1) within fourteen (14) days after being served a copy of it. The party shall file with the clerk and serve on all parties written objections which shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection.

Diana Y. Marti-Novoa v. Rubén Hernández-Gregorat, et al
Civil No. 09-1355 (JAG-CVR)
Report and Recommendation
Page No. 33

San Juan, Puerto Rico, this 1st day of February of 2010.

s/ CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE