IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DIANA Y. MARTÍ NOVOA,

Plaintiff,

v.

LUIS FORTUÑO BURSET, et al.,

Defendants.

CIVIL NO.: 09-1355 (JAG)

## REPORT AND RECOMMENDATION

Pending before the court are motions for summary judgment filed by plaintiff Diana Y. Martí Novoa ("plaintiff" or "Martí"), Dkt. No. 213, and defendants the Municipality of San Juan (the "Municipality"), Jorge Santini Padilla, the Mayor of San Juan ("Santini" or "the Mayor"), and Miriam Herdman, the Director of Human Resources of the Municipality ("Herdman"), in their individual and official capacities (collectively, "the municipal defendants") (Dkt. No. 217).[1] For the reasons set forth below, it is recommended that plaintiff's motion be denied and that the municipal defendants' motion be granted.

### I.   PROCEDURAL HISTORY

On September 15, 2009, plaintiff filed an amended complaint pursuant to 42 U.S.C. § 1983, alleging that she was terminated from her employment with the Metropolitan Bus Authority ("MBA") due to political discrimination and without a pre-termination hearing in violation of her rights under the First Amendment to the United States Constitution and under the Due Process and Equal Protection clauses of the Fourteenth Amendment.  Dkt. No. 106.  She

---

[1] Herdman is identified as "Miriam Hellman" in the complaint, but her motion for summary judgment and the transcripts of her deposition identify her as "Miriam Herdman."

also brings various claims under the laws and Constitution of Puerto Rico.  In addition to the municipal defendants, the complaint also names: the MBA; Santos Delgado Marerro ("Delgado"), in his personal capacity and his official capacity as President of the MBA; Gladys Fuentes Cruz ("Fuentes") in her personal capacity and her official capacity as Director of Human Resources of the MBA; Luis Fortuño Burset, the Governor of Puerto Rico, and various members of his administration (the "Fortaleza defendants"); and the union that represents MBA employees, the Hermandad de Empleados de Oficina y Ramas Anexas (the "union") and its president, Cristino López Hance ("López").  Dkt No. 106.[2]

Subsequently, all defendants filed respective motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Dkt. Nos. 107, 118, 120, 127.  The court granted the motions filed by the Fortaleza defendants, the union, and López, dismissing all claims against those parties, and granted in part and denied in part the motions filed by the municipal defendants, the MBA, Delgado, and Fuentes.  Dkt. No. 190.  The court granted all of said defendants' motion as to the equal protection claim and denied all of their motions as to the due process claim.  With respect to plaintiff's political discrimination claim, the court granted the municipal defendants' motion but denied the motions filed by the MBA, Delgado, and Fuentes.

Plaintiff has moved for partial summary judgment only as to her due process claims against the municipal defendants; the MBA and Delgado and Fuentes in their official capacities (collectively, "the MBA defendants"); and Delgado and Fuentes in their personal capacities. Dkt. No. 213.  Said defendants have all filed responses in opposition to plaintiff's motion.  Dkt.

---

[2] Delgado was the President of the MBA at the time the events alleged in the complaint took place.  According to the MBA's motion for summary judgment, Delgado was succeeded by Mike O'Neill subsequent to the filing of plaintiff's complaint.  Dkt. No. 208.

Nos. 229 (municipal defendants), 246 (MBA defendants), and 252 (Delgado and Fuentes).[3]  The municipal defendants have also filed a cross-motion for summary judgment on the only claim that remains to be decided as to them, to wit, plaintiff's due process claim.  Dkt. No. 217.  Plaintiff has filed a response in opposition, Dkt. No. 291, and the municipal defendants have filed a reply, Dkt. No. 309.

## II.  SUMMARY OF UNCONTESTED MATERIAL FACTS

After applying Local Rule 56, the facts of the case for purposes of the instant motions are set forth below.[4]  Because the three groups of defendants have admitted, or unsuccessfully contested, the same material facts, said facts are summarized jointly.[5]

Plaintiff began working with the Municipality of San Juan in December 1999 as a career employee.  Dkt. Nos. 214, ¶ 1; 217, ¶ 1; 246, ¶ 1; 252-1, ¶ 1.  Her last position at the Municipality was purchasing officer.  Dkt. No. 217, ¶ 1; Dkt. No. 290, p. 2.  On January 15, 2001, she was transferred to La Fortaleza, the Office of the Governor, as a trust employee.  Dkt. Nos. 214, ¶ 2; 217, ¶ 2; 246, ¶ 2; 252-1, ¶ 2.  In August of 2008, plaintiff was notified that she had been selected to occupy a trust position as Special Assistant to the President of the MBA,

---

[3] Each of these responses in opposition contains a number of additional proposed facts, which all remain uncontested as plaintiff has not filed a reply.  See Dkt. No. 262 (seeking untimely extension of time to file replies); Dkt No. 265 (denying request for extension).

[4] Local Rule 56 "structures the presentation of proof at summary judgment."  Goya Foods, Inc. v. Orion Distributors, Inc., Civil No. Civil No. 10-1168 (BJM), 2012 WL 1069191, at * 1 (D.P.R. Mar. 29, 2012).  It "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Market Inv. v. González Toro, 520 F.3d 58, 63 (1st Cir. 2008), by requiring "a party opposing a motion for summary judgment to accept, deny, or qualify each entry in the movant's statement of material facts paragraph by paragraph and to support any denials, qualifications, or new assertions by particularized citations to the record." Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 6-7 (1st Cir. 2007).  In accordance with Local Civil Rule 56(e), all proposed facts that are properly supported by record evidence and have not been successfully controverted or qualified by the opposing party have been deemed admitted.  Likewise, the court has disregarded any proposed facts that are not supported by the cited record evidence.  See L. Civ. R. 56(e) (D.P.R. 2009) (requiring all facts to be supported by a specific record citation).  Additionally, there are certain points that neither party has represented accurately in their opposing statements of proposed facts.  In those instances, the court has derived the correct versions of said facts directly from the summary judgment record.

[5] The municipal defendants have admitted all of plaintiff's proposed facts except for those at Dkt. No. 214, ¶¶ 39, 40, and 43.  See Dkt. No. 229, p. 1.

who, at the time, was Carlos Cortés Díaz ("Cortés").  Dkt. Nos. 214, ¶ 3; 246, ¶ 3; 252-1, ¶ 3.  She was appointed to that position on August 13, 2008.  Dkt. Nos. 214, ¶ 4; 246, ¶ 4; 252-1, ¶ 4.  On December 9, 2008, plaintiff requested to be reinstated to a career position.  Dkt. No. 214, ¶ 5; 246, ¶ 5; 252-1, ¶ 5.  Two days later, Cortés approved her request, and on December 12, 2008 he sent his reinstatement and salary recommendation to the human resources department.  Dkt. Nos. 214, ¶¶ 6-7; 246, ¶¶ 6-7; 252-1, ¶¶ 6-7.  On December 11, 2008, however, the Director of the Commonwealth's Office of Management and Budget ("OMB") requested that plaintiff be transferred to his office for a temporary special assignment.  Dkt. Nos. 214, ¶ 8; 246, ¶ 8; 252-1, ¶ 8.  On December 15, 2008, Cortés approved the special assignment to the OMB and notified plaintiff of the reinstatement to a career position.  Dkt. Nos. 214, ¶¶ 9-10; 246, ¶¶ 9-10; 252-1, ¶¶ 9-10.  On December 16, 2008, a change report was completed reinstating Martí to a career position as a purchasing agent in the MBA.  Dkt. Nos. 214, ¶ 11; 246, ¶ 11; 252-1, ¶ 11; 301-9.  On that same date, plaintiff began her special assignment at the OMB.  Dkt. Nos. 214, ¶ 12; 246, ¶ 12; 252-1, ¶ 12.  On January 23, 2009, the OMB notified the MBA that it no longer required plaintiff's services and that she was thus being returned to the MBA.  Dkt. Nos. 214-12; 214, ¶ 13; 246, ¶ 13; 252-1 ¶ 13.

In a letter dated February 26, 2009 defendant Delgado, who was at that time the interim President of the MBA, notified plaintiff that she was being terminated from her position as of Monday, March 2, 2009, and that she should take the necessary steps to effectuate her reinstatement as an employee with the Municipality of San Juan.  Dkt. Nos. 214, ¶ 25; 246, ¶ 15; 252-1, ¶ 15.  The letter explained that the union had requested her termination because she had not joined it or paid any union dues, as required by the collective bargaining agreement between

the union and the MBA.  Dkt. Nos. 214, ¶ 26; 246, ¶ 16; 252-1, ¶ 16.[6]  Upon receiving the letter,

plaintiff requested an audience with Delgado, which was granted.  Dkt. Nos. 246, ¶ 5; 252-1, ¶ 1.

Consequently, on Friday, February 27, 2009, plaintiff met with Delgado in his office.

Id.[7]  Defendant Fuentes, the MBA Human Resources Director, and Judy A. Morales Morales

("Morales"), an MBA employee whose position the parties do not specify, were also present.

Dkt Nos. 214, ¶ 28; 252-1, ¶¶ 18, 1; 246, ¶¶ 28, 5.  Morales drafted a document commemorating

the conversation between plaintiff and Delgado.  Dkt. Nos. 214, ¶¶ 29-30; 252-1, ¶¶ 29-30; 246,

¶¶ 29-30.  Although the document is titled "Diana Martí hearing," the parties dispute whether the

event was a meeting or a hearing.  Dkt. Nos. 214, ¶¶ 29-32; 252-1, ¶ 19; 287-17.  During that

conversation, plaintiff informed Delgado that she had not joined the union because she was never

told that she had to take action to do so.  Dkt. Nos. 287-17.  She explained that she knew there

were dues, but that she did not know she only had ten days to join the union, and that when she

tried to contact the union president he would not meet with her.  Id.  To all of plaintiff's

explanations, Delgado responded that her termination had been requested by the López, the

president of the union, and that he was obliged to abide by that decision.  Id.  The document

recording the conversation does not reflect any discussion of plaintiff's reinstatement.

At some point thereafter, plaintiff went to the Municipality, but she was informed that she

could not be reinstated there.  Dkt. Nos. 214, ¶ 40; 246, ¶ 30; 252-1, ¶ 40; 252-9.  On March 2,

2009, plaintiff wrote a detailed letter to Delgado indicating her disagreement with her

---

[6] The collective bargaining agreement between the MBA and the union established a "closed shop," meaning that employees in certain job classifications were required to belong to the union.  Dkt. No. 218-8; 301-5.  Defendants have not submitted the section of the collective bargaining agreement that identifies which classifications of employees were covered under the agreement; however, plaintiff has not contested that her career position as a purchasing agent at the MBA was covered.

[7] Delgado and Fuentes have opposed plaintiff's request for judicial notice of the fact that February 27, 2009 was a Friday and that March 2, 2009 was the following Monday.  Dkt. Nos. 214, ¶ 27; 252-1, ¶ 27.  Because the days of the week may be accurately and readily determined from a calendar, a source whose accuracy cannot be reasonably questioned, the court can take judicial notice of this fact.  See Fed. R. Evid. 201(b)(2).

termination and requested that she be given an administrative hearing on the matter.  Dkt. Nos. 214, ¶ 41; 246, ¶ 31; 252-1, ¶ 41.  The next day, on March 3, 2009, plaintiff wrote to Delgado again explaining her position and informing him of her desire for a hearing and that she was returning to work.  Dkt. Nos. 214, ¶ 42; 246, ¶ 31; D.E. 252-1, ¶ 42.

    On March 6, 2009, defendant Herdman, the Director of Human Resources at the Municipality, wrote a letter to Delgado citing a section of the Puerto Rico Autonomous Municipalities Law, which states that when a trust employee is reinstated to a career position the reinstatement "will be made preferably in the organism [sic] where the employee rendered services upon separation from the trust service."  Dkt. No. 287-28.  Accordingly, Herdman concluded in the letter, the Municipality had no obligation to reinstate Martí.  Id.  The letter also indicates that Herdman was returning plaintiff's personnel file to the MBA.  Id.

    On March 9, 2009, Delgado wrote plaintiff a response to her letters of March 2 and March 3, 2009.  Dkt. Nos. 214, ¶ 46; 246, ¶ 35; 252-1, ¶ 46; 287-29.  He recounted plaintiff's objections to her termination, as expressed in her letters of March 2nd and 3rd and verbally on February 27th, and indicated that, nonetheless, her termination was justified due to her failure to join the union.  Dkt. No. 287-29.  He also listed six numbered paragraphs of "facts" that he stated supported her termination, including that human resources personnel had been briefed her about her duties as a union employee, and that the president of the bargaining unit of the union had requested her termination for her failure to comply with the collective bargaining agreement.  Id.  Finally, he concluded, "after analyzing the facts and arguments presented by [plaintiff] both verbally and in writing . . . that there is reasonable justification to confirm the action of separating you from your position at the Authority as notified to you on February 27, 2009."  Dkt. No. 287-29, p. 2.  On March 18, 2009, plaintiff wrote to Delgado once again, demanding to

6

be reinstated to her position given the alleged error in her termination.  Dkt. No. 214, ¶ 47; 246, ¶ 31; 252-1, ¶ 47).

### III.      SUMMARY JUDGMENT STANDARD UNDER FED. R. CIV. P. 56(C)

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992).  Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[8]  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it has the potential of determining the outcome of the litigation.'"  Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant presents a properly focused motion "averring an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'"  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug., Inc., 895 F.2d 46, 48 (1st Cir. 1990).  For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific

---

[8] Rule 56 was amended effective December 1, 2010, after the present suit was filed.  However, "[t]he substantive standard for summary judgment remains unchanged."  Tropigas De P.R. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 n.5 (1st Cir. 2011).  Therefore, since the application of the amended rule to the present case would be "feasible" and would not work an "injustice," Rule 56, as amended, shall govern the determination of the parties' motions.  Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 777 n.4 (1st Cir. 2011) (citing 28 U.S.C. § 2074(a)).

facts" in the record "that demonstrate the existence of an authentic dispute."   McCarthy 56 F.3d at 315.  The plaintiff need not, however, "rely on *uncontradicted* evidence . . . .  So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted).  There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ."  Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).  The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation."   Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

### IV.   ANALYSIS

The MBA defendants as well as Delgado and Fuentes argue that plaintiff's appointment to her career position as a purchasing agent in the MBA was void at the outset, and that she thus had no property interest in that job and was not entitled to due process upon separation from it. Dkt. Nos. 245; 252.  Alternatively, they argue that even if she did have a property interest, she received all the process that she was due.  Id. The municipal defendants argue that plaintiff had no property interest in being reinstated as an employee with the Municipality, and she was therefore not entitled to due process in connection with her reinstatement request.  Dkt. No. 229. Each of these contentions will be addressed in turn.

### A.   Plaintiff's Property Interest in Continued Employment with the MBA

The Due Process clause of the Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law." It is well-established that public employees have a property interest in their continued employment only if "existing rules or understandings" that "stem from an independent source such as state law" create a reasonable expectation that employment will continue. Dávila Alemán v. Feliciano Melecio, 992 F. Supp. 91, 96 (D.P.R. 1997) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); citing Bishop v. Wood, 426 U.S. 341 (1976)). Under Puerto Rico law, public employees that are categorized as "career" or "regular" employees have property interest in their employment. See 3 L.P.R.A. § 1465 ("Career employees . . . are entitled to remain in the service pursuant to the provisions of § 1462e of this title."); § 1462e(4) ("The appointing authority may only . . . remove any career employee for just cause, after having given written notice of the bringing of charges and . . . his/her right to request a hearing before action is taken."); Kercado Meléndez v. Aponte Roque, 829 F.2d 255, 262 (1st Cir. 1987) (construing predecessor statute and holding that Puerto Rico law clearly gives career employees a property interest in their employment). On the other hand, employees classified as "confidential" or "trust" employees do not have a constitutionally protected property interest in their positions and can be freely removed. Galloza v. Foy, 389 F.3d 26 (1st Cir. 2004).

The validity of a public employee's appointment must also be determined by reference to applicable local law; in this case, the intersection between the Commonwealth Public Service Human Resources Administration laws, 3 L.P.R.A. §§ 1461-68p, (formerly the Personnel Act), the Metropolitan Bus Authority Act, 23 L.P.R.A. §§ 601-20, and the MBA's own personnel regulations. The MBA defendants, Delgado, and Fuentes argue that plaintiff's reinstatement to a

career position from a trust position in December of 2008 violated a section of the Commonwealth public service law known as the electoral ban or moratorium, which prohibits making any changes to employees' status during the two months preceding and following the holding of the General Elections in Puerto Rico.  3 L.P.R.A. § 1462h.  Specifically, the law voids "any personnel transaction which include the essential areas of the merit principle, such as appointments, promotions, demotions, or transfers . . . changes or . . . compensation actions or changes of job category."  Id.[9]  Defendants argue that plaintiff's change in category was therefore void because it took place the month following the November 2008 General Election.  Plaintiff contends that reinstatements from trust to career positions are not covered by this prohibition.

       As an initial matter, the electoral ban applies to the MBA.  The MBA is a public corporation that, "for constitutional purposes, operate[s] as a private enterprise or business," 23 L.P.R.A. § 602, and is therefore expressly excluded from the provisions of the Commonwealth laws public service human resources laws.  See 3 L.P.R.A. § 1461e(3).  However, said laws mandate public corporations to "adopt personnel regulations that incorporate the merit principle within the administration of their human resources, pursuant to the provisions of this chapter."  3 L.P.R.A. § 1461e.  Moreover, "when an excluded agency's own regulations 'do not comply with the fundamental purpose of guaranteeing strict application of the merit principle . . . the provisions of the [Personnel] Act . . . shall be applied."  Estrada Adorno v. González, 861 F.2d 304, 306 (1st Cir. 1988) (citing Torres Ponce v. Jiménez, 113 P.R.R. 58, 70-71 (1982)) (alterations in original).  The Supreme Court of Puerto Rico has declared that the electoral

---

[9] The merit principle is contained in the Commonwealth Public Service Human Resources Law and ensures that personnel transactions such as selection, training, promotion, and retention are based on employee merit and skill and without discrimination for various impermissible reasons, including race, sex, religion or  political beliefs.  3 L.P.R.A. § 1451a.

prohibition is the "safeguard par excellence of the merit principle governing the public service." Ortiz v. Mayor of Aguadilla, 107 D.P.R. 819, 824 7 P.R. Offic. Trans. 890 (1978); see also Reyes Coreano v. Executive Director of the P.R. Ports Authority, 110 D.P.R. 40, 10 P.R. Offic. Trans. 51 (1980) ("[T]he [pre- and post-electoral] prohibition . . . was established, precisely, to guaranty the faithful application of the merit principle in the public service.").   Therefore, the electoral ban must apply to the MBA, even if its regulations do not expressly reference it.[10]

Additionally, although the First Circuit has never explicitly held that a reinstatement from a career to a confidential position violates the electoral ban, the language of the statute and Puerto Rico Supreme Court precedent indicate that it does.[11]   In Colón Santiago v. Rosario, 438 F.3d 101 (1st Cir. 2006), the plaintiffs were employees of the Puerto Rico Power Authority ("PREPA"), who had been reinstated from trust to career positions during the electoral ban time period.   Upon reinstatement, they retained the same salaries they had received as trust employees, which were higher than the salaries of employees in comparable career positions. When the new administration came into power and plaintiffs' salaries were reduced, they argued that they had been deprived of a property interest without due process of law.   In its defense, PREPA argued that plaintiffs' reinstatements were void because they had occurred during the electoral ban.   Id. at 109.   The court, however, did not reach this question because it found that

---

[10] The complete MBA regulations are not before the court, as the parties have submitted only limited excerpts for the summary judgment record.   None of those excerpts include a section that reflects the electoral ban found at 3 L.P.R.A. §1462h.

[11] Neither party has cited any case law to support their respective positions on whether the electoral ban applies to reinstatements.   Plaintiff cites several Puerto Rico Court of Appeals cases regarding the right to reinstatement, but none have official English translations and plaintiff has not provided translations.   Dkt. No. 213, p. 16.   Similarly, the MBA defendants cite a Puerto Rico Court of Appeals case holding that a trust employee's reinstatement to a career position was voided by the electoral ban, but also have not provided a certified translation and there is no official translation.   Dkt. No. 245, p. 5 (citing Silén Beltrán v. Depto. de Estado, Case No. RPE-01-12-669, 2005 WL 190052 (TCA Jan. 11, 2005)).   Although decisions of intermediate state courts should guide a federal court where there is no other binding precedent, see Fidelity Union Trust Co. v. Field, 311 U.S. 176, 177-78 (1940), any decisions upon which a party relies that is not written in English must be accompanied by an English translation. Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008).   Accordingly, the court cannot consider the un-translated, Spanish-language cases upon which the parties have based the aforementioned arguments.

the reinstatements to lower positions with higher salaries constituted de facto promotions, and it was "undisputed that promotions are prohibited by the ban." Id. The court then emphasized that it was "in no way expressing any opinion as to whether a reinstatement in general during the electoral ban is per se invalid." Id. The First Circuit has not subsequently had occasion to address this question.

The ban, by its terms, however, prohibits "changes in category." It is clear from other provisions of the Puerto Rico public service laws that the word "category" refers to the distinction between trust and career positions. The subchapter addressing the relationship between trust and career positions is entitled "employee categories," 3 L.P.R.A. §§ 1465-1465c, and the subsection entitled "change of service and category" discusses the procedure for moving from a trust to a career position and vice versa. 3 L.P.R.A. § 1465c. Additionally, the subsection entitled "job classification" references job characteristics other than the trust and career distinction. 3 L.P.R.A. § 1462a. Therefore, the text of the public service laws indicate that moving from a trust to career position is a "change in category" of the type referred to in the electoral moratorium.

Moreover, the ban is not limited to the listed personnel transactions, but rather covers "*any* personnel transaction which includes the essential areas of the merit principle, *such as* appointments, promotions, demotions, or transfers . . . changes or . . . compensation actions or changes of job category." 3 L.P.R.A. § 1462h (emphasis added). This inclusive language, coupled with the ban's importance to preserving the merit principle, has led the Puerto Rico Supreme Court to apply it broadly. See, e.g., Zambrana Torres v. González, 145 D.P.R. 616, 199 P.R. Eng. 854, 541 (1998) (holding that approval of employee's completion of a probationary period that occurred within two months of election violated electoral ban, upon certification of

question from the U.S. District Court for the District of Puerto Rico) (plurality opinion) (Negrón García, J., concurring); <u>Zambrana Torres v. González</u>, 71 F. Supp. 2d 14, 20 (D.P.R. 1999) (agreeing with Justice Negrón García's concurrence and adopting it as opinion of the court). Additionally, the Puerto Rico Supreme Court noted that all of the listed transactions have in common, in addition to being essential to the merit principle, that they "could be used as a reward or a punishment for politico-partisan acts and beliefs." <u>Id.</u> at 631 (Corrada del Río, J., concurring). A reinstatement from a trust to a career position fits within this category. While trust positions are often higher in an agency hierarchy, because they are occupied by employees who are involved in policy-making or work directly with agency heads, career employees have the advantage of lifetime tenure with removal only for good cause. Therefore, reinstatement to a career position might conceivably be used as an attempt by an outgoing political party "to embed permanently its employees  . . . by reclassifying positions," <u>Sánchez López v. Fuentes Pujols</u>, 375 F.3d 121, 129 (1st Cir. 2004), thereby constituting a reward for employees loyal to that party. Accordingly, reinstatement from a trust to a career position is the type of personnel transaction that is prohibited by the electoral ban.

Plaintiff's reinstatement from her trust position with the MBA to a career position in the MBA was void because it occurred on December 16, 2008, less than two months after the 2008 General Election.[12] <u>See</u> 3 L.P.R.A. § 1462h ("Failure to comply with this measure shall entail the voiding of the transaction thus carried out."). Voiding this appointment leaves plaintiff in her previous trust position in the MBA. It is undisputed that plaintiff did not have a constitutionally-

---

[12] The MBA defendants also argue that plaintiff's appointment was void because it did not comply with Article VI of the collective bargaining agreement, which requires vacant positions to be opened to competition, Dkt. No. 227-6, as plaintiff was reinstated automatically without applying for the position in competition with other applicants. Defendants, however, do not explain how or why this provision applies to a trust employee who, like plaintiff, had a right to reinstatement in a career position, and the cited section of the agreement does not make clear whether it applies only to new hires but also to reinstatements. Moreover, as discussed below, even if plaintiff's appointment were void for this reason, she would still have a right to reinstatement to a different career position.

protected property interest in that position, as trust employees are of free selection and removal under Puerto Rico law.  Galloza, 389 F.3d 26 (1st Cir. 2004).

Nevertheless, as plaintiff correctly points out, she was a trust employee who had formerly been a career employee.  This gave her the right to reinstatement in a career position upon separation from her trust position.  Plaintiff is mistaken, however, in asserting that the Municipality was obliged to reinstate her, as that responsibility lay with the MBA, according to its own regulations.  Specifically, the MBA's regulations provide that:

> When a regular employee in a career position, either at the Authority or transferred from another Agency, public instrumentality, or Municipality, comes to hold a position of trust and is subsequently removed from the position of trust held, he will be entitled to reinstatement *at the Authority* in the same position or a position similar to that which he held in the career service before entering the position of trust.

MBA Personnel Regulations § 13.2(b), at Dkt. No. 227-4 (emphasis added).  Because plaintiff was removed from her trust position at the MBA, and had previously been an employee in a career position at the Municipality, the regulation entitles her to be reinstated in a career position at the MBA, but not at the Municipality.[13]  The First Circuit Court of Appeals has held that this reinstatement right constitutes a property interest in continued public employment.  See Gaztambide Barbosa v. Torres Gaztambide, 902 F.2d 112 (1st Cir. 1990) (denying qualified immunity to defendants who summarily dismissed trust employee who had reinstatement right under agency's regulations).  In Gaztambide, the plaintiff was a trust employee at the Puerto Rico Housing and Urban Development Corporation ("HUDC"), who had previously been a career employee at the Puerto Rico Office of Youth Affairs.  Id. at 113.  The HUDC is a public

---

[13] The municipal defendants cite a similar provision of the Autonomous Municipalities Law, which states that a trust employee who was formerly a career employee is entitled to be reinstated as a career employee.  The applicable law here is the MBA regulation, as plaintiff was employed there at the time she was terminated; however, even if the Autonomous Municipalities Law applied, the result would be the same.  That section provides that the trust employee's "reinstatement shall preferably take place in the same body where he/she served prior to leaving the confidential service."  21 L.P.R.A. § 4559.  Here, that body is, of course, the MBA.

corporation that had a regulation with similar language and the same substance as the above-cited MBA regulation.  Accordingly, the court held that the plaintiff had a clearly established property interest in being reinstated in a career position with the HUDC upon being terminated from his trust position with that agency.  Id. at 115.  In so holding, the court clarified that reinstatement under this rule was not akin to a new hire, but was instead a form of continued employment with the agency.  Id. at 115-16 ("The refusal to find plaintiff a different position within the same agency amounted, functionally, to a dismissal from the agency.").  Therefore, the right to reinstatement is a property interest that merits due process protections.  See id. at 114; Gaztambide Barbosa v. Torres Gaztambide, 776 F. Supp. 52, 60 (D.P.R. 1991) (holding, upon remand, that defendants violated due process rights of plaintiff entitled to reinstatement by dismissing him without any written explanation or pre-termination hearing).  Plaintiff too, then, had a property interest in her continued employment with the MBA by virtue of her right to reinstatement in a career position that was the same or similar to the career position she had previously held with the Municipality.  To reiterate, though, plaintiff had only a right to reinstatement at the MBA, not the Municipality.  Accordingly, the municipal defendants are not liable to plaintiff on her due process claim, and it is thus recommended that plaintiff's motion be denied as to said defendants and that the municipal defendants' motion for summary judgment be granted.

### B.  Whether Plaintiff Received the Process That Was Due

Having determined that plaintiff had a property interest in her continued employment with the MBA, the question now is whether she received the process due to her.  It is well established that the minimum process due to a tenured public employee prior to termination is "oral or written notice of the charges against him, an explanation of the employer's evidence,

and an opportunity to present his side of the story."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); see also López Quiñonez v. Puerto Rico Nat'l Guard, 488 F. Supp. 2d 112, 119 (D.P.R. 2007) ("[T]he minimum elements of procedural due process [are] 'some kind of a hearing' and an opportunity to respond to the allegations against [the employee.]") (quoting Torres Rosado v. Rotger Sabat, 335 F.3d 1, 10 (1st Cir. 2003)); Cepero Rivera v. Fagundo, 414 F.3d 124, 135 (1st Cir. 2005) ("Due process requires only that the pre-termination hearing fulfill the purpose of 'an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.").  Additionally, the opportunity to be heard must take place "at a meaningful time" and "in a meaningful manner."  See Loudermill, 470 U.S. at 547; Figueroa Serrano v. Ramos Alverio, 221 F.3d 1, 5-6 (1st Cir. 2000).  Here, plaintiff argues that she received no process because she was terminated on the day that she received the letter from Delgado and thus had no notice or opportunity to tell her side of the story.  Alternatively, she contends that the letter from Delgado and the "meeting" at his office (which defendants maintain was a "hearing") were insufficient procedural protections.

Plaintiff's first argument is neither supported by logic nor the cases that she cites to support it.  She asserts that "she was terminated upon receipt of the February 26, 2009 letter" because the receipt of the termination letter is the "moment of injury" for statute of limitations purposes.  Dkt. No. 213, pp. 9-10.  The cases that plaintiff cites do support the proposition that the statute of limitations for a due process claim begins to run at the moment the employee "reliably kn[ows] that he ha[s] lost his job."  Rivera Muriente v. Agosto Alicea, 959 F.2d 349, 354 (1st Cir. 1992); see also Morán Vega v. Cruz Burgos, 537 F.3d 14, 20 (1st Cir. 2008) ("Thus the clock began running, for purposes of section 1983, when Morán Vega received the letter

notifying him of his suspension on December 3.").   Nevertheless, simply because a plaintiff knows of an injury does not mean that it has already occurred.  When plaintiff received the letter on February 27, 2009, she knew that she would be terminated on March 2, 2009.  That is because the letter expressly stated that her termination would be effective on March 2nd.  It would defy logic to determine that plaintiff was terminated prior to the stated effective date of her termination.  Moreover, to hold otherwise would make it impossible for any employer to comply with the Due Process clause.  If an employee's termination is always deemed to occur at the moment she receives notice of the termination, then it would be impossible for an employer to provide both notice and a pre-termination opportunity to be heard.  This argument, therefore, is unpersuasive.

The remaining question is whether plaintiff received sufficient notice and an opportunity to be heard prior to her March 2, 2009 termination.  Because the uncontested facts preclude a definitive answer to this question, it is recommended that plaintiff's motion for summary judgment be denied.  It is undisputed that plaintiff received a letter on February 27, 2009 explaining that she would be terminated three days later because she had failed to join the union or pay dues as required by the closed shop clause of the collective bargaining agreement.  The letter therefore provided her clear notice of the action to be taken and at least one of the reasons for it. However, it is not clear whether Delgado decided to terminate plaintiff solely because of the union's request or also because he believed that her reinstatement had violated the electoral ban and Article VI of the collective bargaining agreement, which required employees to compete for vacant positions.   In their responses in opposition to plaintiff's motion for summary judgment, the MBA defendants and Delgado and Fuentes proffer the alleged illegality of plaintiff's appointment to her MBA career position only to support their contention the

17

reinstatement was void, and that she thus had no due process interest in that position.  They do not argue that it was the reason for her termination.  By contrast, both Delgado and Fuentes made ambiguous statements in their depositions indicating that these were additional reasons for plaintiff's termination.  In Delgado's deposition, he recounted a conversation he had with a human resources employee after receiving the request from the union to terminate plaintiff due to her failure to pay dues.  Dkt. No. 287-23, p. 34.  He mentions that said employee informed him that plaintiff's reinstatement had violated Article VI of the collective bargaining agreement because she had not competed against other candidates for the position.  Dkt. No. 287-23, p. 34, ll. 16-25.  He then states that he decided to go ahead with the course of action requested by the union, i.e., to terminate plaintiff.  It is not clear, however, whether the alleged illegality of her appointment factored into that decision.  Similarly, Fuentes testified that the nonpayment of dues was the "main reason" for plaintiff's termination but that the electoral ban and the manner of her reinstatement were "also in the case, however, they [were] secondary."  Dkt. No. 287-42, p. 10, ll. 22-24.  If these were indeed additional reasons for plaintiff's termination, she needed to have notice of them prior to her meeting with Delgado and Fuentes or else her opportunity to be heard was not meaningful.  If an employee is not informed of all of the charges against her, then she is unable to respond to those allegations and tell her side of the story.  Therefore, if the issues of the electoral ban and the allegedly improper reinstatement factored into plaintiff's termination, her due process rights were violated because she was not informed of these reasons.  Because the evidence in the summary judgment record permits more than one conclusion as to whether these issues did factor into the decision to terminate plaintiff, this is a factual question that must be resolved by a jury.

Even assuming that plaintiff received constitutionally adequate notice, it is unclear whether her opportunity to be heard comported with the Fourteenth Amendment. Plaintiff's own arguments to this effect, however, are unavailing. First, although the parties make much of whether the February 27, 2009 meeting with plaintiff, Delgado, and Fuentes was officially titled a "meeting" or a "hearing," this is merely a question of semantics. The Constitution only requires a meaningful opportunity to be heard, in any form. In fact, the First Circuit has stated that "the opportunity to hear and respond to the employer's reasons could be accomplished either in writing or in an informal face-to-face meeting." See Whalen v. Mass. Trial Court, 397 F.3d 19, 26 (1st Cir. 2005) (citing Loudermill, 470 U.S. at 546); see also Loudermill, 470 U.S. at 546 ("[T]he pretermination hearing, though necessary, need not be elaborate."); O'Neill v. Baker, 210 F.3d 41, 49 (1st Cir. 2000) ("The Constitution requires only an initial check against erroneous decisions."). Therefore, the meeting in Delgado's office was not necessarily constitutionally deficient, as long as it was a meaningful opportunity to be heard.

Similarly, plaintiff's contention that she did not receive the pre-termination process described in the MBA's regulations fails to advance her due process claim. The Due Process clause of the federal Constitution does not require the MBA to follow its own internal grievance regulations, as long as the employee receives the constitutional requirements of pre-termination notice and a meaningful opportunity to be heard. See Whalen, 397 F.3d at 26 ("[W]hat process is due is a question of federal law."); O'Neill, 210 F.3d at 49 n.9 ("[C]laims involving state procedural guarantees that are above and beyond constitutional due process requirements are not properly before us."). Further, those regulations, in fact, provide little more than the process plaintiff actually received. They state that a career employee may be dismissed "for just cause, after the filing of charges in writing and after an administrative hearing if the employee so

19

requests." MBA Personnel Regulations, § 15.7(a) at Dkt. No. 287-14. Plaintiff claims a right to other procedures described in those regulations, such as an investigation within fifteen days, notice of the right to an informal administrative hearing, and notice of the opportunity to appeal the hearing decision. Id. at 15.7(b). However, that section of the regulations expressly applies only to "any case in which the possible application of disciplinary measures arises." Id. In plaintiff's case, there is no indication that her termination was undertaken as a disciplinary measure, but rather as part of the MBA's obligatory compliance with the collective bargaining agreement. Therefore, it does not appear that plaintiff had a right to these procedures under the MBA's rules, and she is not entitled to them under the federal Constitution.[14] Accordingly, the form of the meeting in Delgado's office poses no constitutional problems.

Substantively, however, the record leaves open the possibility that plaintiff's opportunity to be heard at the meeting was not "meaningful," as required by the Due Process clause. First of all, a plaintiff who can show that "the decision has already been made and any hearing would be pro forma and meaningless is entitled to go forward with a due process claim." López Anaya v. Palacio de Miranda, Civil No. 06-2085 (CCC), 2007 WL 225 4501 (D.P.R. Aug. 6, 2007) (citing Ryan v. Illinois Dep't of Children and Family Svcs., 185 F.3d 751, 763 (7th Cir. 1999)) (unpublished). The evidence of record is inconclusive as to whether Delgado had already made up his mind to terminate plaintiff prior to hearing her side of the story. The minutes of the meeting reflect that plaintiff explained to Delgado that the reason she had not joined the union was because she did not know that she was responsible for taking affirmative steps to do so. She also stated that she had spoken to human resources employees, but that they had not given her the proper information about joining the union. Dkt. No. 287-17. The minutes reflect only two

---

[14] If the MBA did violate its own regulations, plaintiff may have a cause of action for this under state law. This issue, however, is not currently before the court.

responses from Delgado to all of plaintiff's statements, which are essentially the same: that the request to terminate her came from the union and that Delgado had to abide by that decision. Dkt. No. 287-17.  Therefore, a reasonable jury could infer that Delgado had already made up his mind to fire plaintiff, regardless of any explanation that she might provide at the meeting.  This is especially so because the minutes do not reflect any response specifically directed towards plaintiff's explanations.  On the other hand, the minutes may not reflect all that was said at the meeting, and perhaps Delgado's responses were more thorough.  It is also possible that Delgado considered plaintiff's explanations but did not find them convincing.  Accordingly, there are outstanding factual questions that preclude a determination on whether plaintiff's opportunity to be heard was meaningful.

Additionally, plaintiff's due process claim may be bolstered if she can show that she did not have an opportunity to address the issue of her reinstatement.  On the one hand, plaintiff's transfer to a career position during the electoral ban was void such that she in fact had the status of a trust employee at the time of her termination and could be freely removed, with or without cause.  On the other hand, plaintiff's right to reinstatement upon conclusion of the electoral ban period did give her a property interest in continued employment with the MBA.  Therefore, if her opportunity to be heard was to be meaningful with respect to her protected property interest, she needed to be informed of the MBA's position on her right to reinstatement and given the chance to respond to it.  The termination letter did tell plaintiff that she should seek reinstatement with the Municipality, but included no explanation as to why the MBA believed this was the extent of her reinstatement right.  Moreover, Delgado failed to include in the letter the applicable MBA regulation that in fact gave plaintiff a right to reinstatement in the MBA.  Without this information, plaintiff would have been unable to express her opinion as to her reinstatement

rights at the meeting.  Once again, however, it is not clear whether the minutes of the meeting contain all that was said during that conversation.  Therefore, it is possible that plaintiff did have an opportunity to be heard as to her reinstatement right.  Therefore, this is another factual question that precludes entry of summary judgment on plaintiff's due process claim.

In conclusion, there are several genuine issues of material fact that preclude entry of summary judgment on plaintiff's due process claim against the MBA defendants, Delgado, and Fuentes.  Specifically, whether plaintiff was notified of all the reasons for her termination, whether Delgado had definitively decided to terminate plaintiff prior to the meeting, and whether plaintiff had the chance to discuss her right to reinstatement, are all questions of fact that could be resolved in favor of either plaintiff or defendants, and are material to whether plaintiff received a meaningful opportunity to be heard.  Summary judgment should only be granted if there is no genuinely disputed material fact and the record compels a judgment in favor of the moving party.  See Fed. R. Civ. P. 56(a).  Accordingly, it is recommended that plaintiff's motion for summary judgment as to her procedural due process claim be denied.

### C.  Substantive Due Process

Plaintiff also asserts a substantive due process claim against all the defendants named in her motion, which is based on the same factual allegations as her claim that they failed to provide her with due process prior to terminating her.  Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty.'"  United States v. Salerno, 481 U.S. 312, 327 (1986).  "In order to shock the conscience, conduct must at the very least be truly outrageous, uncivilized, and intolerable."  Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999).

Plaintiff contends that defendants' actions were conscience-shocking because they "clearly denote intent to harm the plaintiff when they put aside all of the provisions of the MBA's regulation[s] to do what they wanted which was to terminate Martí-Novoa." Dkt. No. 213, p. 15. This argument misses the mark. Defendants' behavior is miles removed from that which courts have found sufficient to constitute a violation of substantive due process. Conscience-shocking conduct has been found only in "extreme cases entailing physical or psychological abuse, or significant interference with a protected relationship." Concepción v. Municipality of Gurabo, 558 F. Supp. 2d 149, 161 (D.P.R. 2007) (collecting cases). Examples of such conduct include:

> a student blinded in one eye when a coach intentionally struck him in the head with a metal weight, see Neal v. Fulton Cty. Bd. of Educ., 229 F.3d 1069, 1076 (11th Cir. 2000); a teacher's fabrication of sexual abuse charges against a father, resulting in loss of contact with his child for three years, see Morris v. Dearborne, 181 F.3d 657, 668 (5th Cir. 1999); rape by a police officer in connection with a car stop, see Rogers v. City of Little Rock, 152 F.3d 790, 797 (8th Cir.1998); a 57-day unlawful detention in the face of repeated requests for release, see Armstrong v. Squadrito, 152 F.3d 564, 582 (7th Cir. 1998); police officers aiding a third-party in shooting the plaintiff, see Hemphill v. Schott, 141 F.3d 412, 419 (2d Cir. 1998); an intentional assault by a police officer who struck a pretrial detainee twice in the head and threatened to kill him, see Johnson, 481 F.2d at 1029-30; and a principal forcing his way into a room where a student was hiding, grabbing her from the floor, throwing her against the wall, and slapping her, see Webb v. McCullough, 828 F.2d 1151, 1159 (6th Cir. 1987).

Cummings v. McIntire, 271 F.3d 341, 346 (1st Cir. 2001). It is evident that the conduct here does not rise to this level. Therefore, it is recommended that plaintiff's motion for summary judgment be denied as to her substantive due process claim.

### D.  Supplemental Jurisdiction over Puerto Rico Law Claims

Because it is recommended that the municipal defendants be granted summary judgment on plaintiff's only remaining federal claim against those defendants, it is also recommended that all of plaintiff's state law claims against them be dismissed without prejudice. Federal courts

may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims that gave it original jurisdiction are dismissed. See 28 U.S.C. § 1367(c)(3); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir.1998). If all federal claims are dismissed prior to trial, then the state law claims should be dismissed as well. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir.1995). Therefore, it is recommended that the municipal defendants' motion for summary judgment be granted as to plaintiff's state law claims and that said claims be dismissed without prejudice.

## V.   CONCLUSION

Based on the foregoing analysis of defendants' motions, it is hereby recommended that plaintiff's motion for summary judgment, Dkt. No. 213, be DENIED and that the municipality defendants' motion for summary judgment, Dkt. No. 217, be GRANTED.

The parties have fourteen (14) business days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this report and recommendation. Fed.R.Civ.P. 72(b)(2); Fed.R.Civ.P. 6(c)(1)(B), and Local Rule 72(d); see also 28 U.S.C. § 636(b)(1); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 13th day of August, 2012.

s/Marcos E. López
U.S. Magistrate Judge